# IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEFFREY BRUNO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-2052 |
| V. | ) | |
| | ) | |
| MAYOR CHASTITY | ) | |
| WELLS-ARMSTRONG in her individual | ) | |
| and official capacities, JAMES | ) | |
| ELLEXSON, in his individual and official | ) | |
| capacities, and THE CITY OF | ) | **Jury Demanded** |
| KANKAKEE, a Municipal corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## CIVIL COMPLAINT

NOW COMES Plaintiff, JEFFREY BRUNO, by and through his attorneys, The Walters Law Firm, complaining of Defendants, MAYOR CHASTITY WELLS-ARMSTRONG, JAMES ELLEXSON and the CITY OF KANKAKEE, and in support thereof states as follows:

## INTRODUCTION

This is a civil action seeking damages against Defendants for committing acts under color of law, and depriving Plaintiff of his rights secured by state legislation, federal legislation, and the Constitution. At all relevant times, Plaintiff was employed by Defendant City of Kankakee Fire Department. During his employment, Plaintiff suffered a severe condition to his heart, and as a result, was unable to attend a college program and work at the same time. Initially, Defendants did not require Plaintiff to engage in activities that could damage his health and jeopardize his healing process. However, once the Defendants believed Plaintiff had revealed illegal activities to a tribunal, their position reversed. At that time, Defendants began a campaign against him,

forcing him to either endanger his health or accept a demotion. Eventually, he was forced to resign from his position with the City. Plaintiff has, and continues to be, significantly harmed by the unconstitutional conduct of Defendants.

## JURISDICTION AND VENUE

1.      Plaintiff brings this action for damages and equitable relief pursuant to Title I of the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12111B12117, 12203, and 1981a; the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 to 5/10-104; and Illinois common law.

2.      Jurisdiction of this action is conferred upon the Court by 28 U.S.C. §§ 1331, 1343(a)(3), and 1367(a); and 42 U.S.C. §§ 2000e-5(f)(3) and 12117(a).

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in the Northern District of Illinois, Eastern Division, and a substantial part of the unlawful employment practices alleged have occurred in that district.

## PARTIES

4.      At all times relevant to this case, Plaintiff Jeffrey Bruno ("Plaintiff") was an employee of the Kankakee Fire Department ("KFD") and a United States Citizen residing in the City of Kankakee, County of Kankakee, State of Illinois.

5.      At all times relevant to his involvement in this case, Defendant Mayor Chastity Wells-Armstrong ("Defendant WELLS-ARMSTRONG") was the present or former Mayor of the City of Kankakee, and at all times relevant Defendant WELLS-ARMSTRONG acted within the scope of her employment and under the color of law.

6.      At all times relevant to his involvement in this case, Defendant James Ellexson ("Defendant ELLEXSON") was the current or former Director of Human Relations for the City

of Kankakee, and at all times relevant Defendant ELLEXSON acted within the scope of his employment and under the color of law.

7.      At all times relevant to its involvement in this case, Defendant City of Kankakee ("Defendant CITY") was a municipal corporation duly incorporated under the laws of the State of Illinois and is the employer and principal of the individual defendants.

## PROCEDURAL REQUIREMENTS

8.      Plaintiff fulfilled all conditions precedent to the institution of this action under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq ..*

9.      Plaintiff filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission ("EEOC") on or about August 25, 2019 alleging discrimination and retaliation. *See* attached hereto as Exhibit A, *Plaintiff's Charge of Discrimination*.

10.     The EEOC issued Plaintiff's "Notice of Right to Sue" dated December 16, 2019. *See* attached hereto as Exhibit B, *Plaintiff's Notice of Right to Sue*.

11.     Plaintiff has timely filed this lawsuit within ninety (90) days from the date of receipt of this Notice of Right to Sue.

## BACKGROUND FACTS

12.     Plaintiff is a veteran firefighter and has been with the KFD for the last 28 ½ years.

13.     On September 19, 2017, Plaintiff suffered an aortic dissection while on duty.

14.     According to the Mayo Clinic "An aortic dissection is a serious condition in which the inner layer of the aorta, the large blood vessel branching off the heart, tears. Blood surges through the tear, causing the inner and middle layers of the aorta to separate (dissect). If the

blood-filled channel ruptures through the outside aortic wall, aortic dissection is often fatal."
https://www.mayoclinic.org/diseases-conditions/aortic-dissection/symptoms-causes/syc-2036949
6 (February 19, 2020).

15.    While still recuperating, Plaintiff went back to work on December 4, 2017.

16.    In May of 2017, Defendant WELLS-ARMSTRONG was elected Mayor of Kankakee.

17.    Sometime in January of 2018, Plaintiff went back to college in order to increase his
chance of receiving a raise and being promoted.

18.    Sometime in February 2018, Plaintiff was promoted to the position of Interim Assistant
Chief. Shortly thereafter, he was promoted to Deputy Chief. Plaintiff was not provided with an
employment contract at this time.

19.    Throughout 2018, Plaintiff sent several emails requesting an employment contract and
was either ignored or the matter was put in abeyance.

20.    Sometime in June or July 2018, Plaintiff spoke with his doctor because he was having
symptoms associated with his aortic dissection. His doctor instructed him to cease attending the
college program and working simultaneously. His doctor told him that he would get him a note
when he came in for his appointment in February, if necessary.

21.    On January 7, 2019, Plaintiff met with Defendant WELLS-ARMSTRONG and
DEFENDANT Ellexson in order to discuss the terms of the employment contract provided to
him in January 2019. At that time, he told the Defendants that he would not be able to continue
the college program on medical advice. He also informed them that his doctor has offered to
provide a note memorializing the medical advice he had given. The Defendants said they would
make accommodations for him.

22.     On January 11, 2019, Plaintiff spoke with Defendant ELLEXSON over the phone. Defendant ELLEXSON told Plaintiff that paragraph 13, the line that required him to "maintain year round enrollment to complete his bachelor of science, or related degree" was "null and void." he did not need to continue to attend school while working in order to maintain his position - that a Doctor's note would "trump" any educational requirements. Plaintiff continued his employment as the Deputy Chief of the KFD.

23.     On January 18, 2019, Plaintiff signed the employment contract

24.     Additionally, in February 2019, Plaintiff's doctor provided him with a letter indicating that his continued schooling, while working, would be counterproductive to his health. He promptly gave that letter to Defendants.

25.     Plaintiff received high marks on his 2018 evaluation.

26.     On July 18, 2019, a fellow firefighter filed suit against the Defendant CITY and its employees. The suit contained information familiar to Plaintiff. However, Plaintiff is not named as a Defendant.

27.     Upon the filing of this suit, Defendant ELLEXSON wrongfully instructed Plaintiff not speak with the firefighter who had filed suit. Plaintiff could not follow their instructions, as the firefighter was under his supervision.

28.     Shortly after the suit was filed, Defendant ELLEXSON insinuated that Plaintiff had been speaking with the former firefighter who had filed suit and divulged discussions had in private meetings.

29.     On July 31, 2019, Defendant CITY sent Plaintiff a new proposed employment contract requiring him to be enrolled in a college program in order to get his raise. This was contrary to

the January 2019 agreement and with full knowledge that he would not be able go back to college and work simultaneously without severely risking his health.

30.    On August 8, 2019, Plaintiff spoke with Defendant ELLEXSON and requested that the language requiring him to be enrolled in an accredited college program be removed as a reasonable accommodation under the ADA. Defendant ELLEXSON refused to remove the language.

31.    On August 19, 2019, Defendant ELLEXSON told Plaintiff that if he didn't sign the employment agreement by August 23, 2019, he would be demoted back to Captain.

32.    On August 26, 2019, Plaintiff resigned from his position effective August 30, 2019.

## CAUSES OF ACTION

### COUNT I - ADA DISCRIMINATION
Against Defendant CITY

33.    Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein

34.    The ADA forbids a "covered entity" from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

35.    Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A).

36.    Plaintiff is a qualified individual with a disability as defined by 42 U.S.C. §§ 12102 and 12111(8). At all relevant times, Plaintiff was Defendant's employee, as defined by 42 U.S.C. §

12111(4).

37.     Defendant is a covered entity as defined by 42 U.S.C. § 12111(2).

38.     In violation of the ADA, Defendant failed to make reasonable accommodations for Plaintiff.

39.     As a proximate cause of the aforementioned unlawful employment actions, Plaintiff has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, emotional distress, and medical expenses.

## COUNT II - ADA RETALIATION
### Against Defendant CITY

40.     Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein

41.     In making his requests for accommodation, Plaintiff engaged in protected activity under the ADA.

42.     Defendant WELLS-ARMSTRONG and Defendant ELLEXSON, as agents of the Defendant CITY, took adverse employment action against Plaintiff by forcing him to resign, constructively terminating his employment.

43.     In violation of the ADA, 42 U.S.C. § 12203(a), Defendant took the adverse employment action against Plaintiff on account of his lawful requests for accommodation.

44.     As a proximate cause of the aforementioned unlawful employment actions, Plaintiff has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, emotional distress, and medical expenses.

## COUNT III - IHRA FAILURE TO ACCOMMODATE
### Against Defendant CITY

45.     Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein

46.     The IHRA makes it unlawful for an employer, such as Defendant, "to refuse to hire, to segregate, or to act with respect to recruitment, hiring, promotion, renewal of employment, selection for training or apprenticeship, discharge, discipline, tenure or terms, privileges or conditions of employment on the basis of unlawful discrimination." 775 ILCS 5/2-102(A).

47.     Under 775 ILCS 5/1-103(Q), unlawful discrimination includes discrimination against a person because of his disability. Employers are required to make reasonable accommodation for the known physical limitations of otherwise qualified employees. 56 Ill. Admin. Code § 2500.40.

48.     Plaintiff is a qualified employee, as defined by 775 ILCS 5/2-101(A), with a disability, as that term is defined in 775 ILCS 5/1-103(I).

49.     In violation of the IHRA, Defendant CITY failed to make reasonable accommodations for Plaintiff.

50.     As a proximate cause of the aforementioned unlawful employment actions, Plaintiff has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, emotional distress, and medical expenses.

51.     In its actions toward Plaintiff, Defendant CITY acted with malice.

COUNT IV - IHRA RETALIATION
Against Defendant CITY

52.     Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein

53.     In making his requests for accommodation, Plaintiff engaged in protected activity under the IHRA.

54.     Defendant took adverse employment action against Plaintiff by forcing him to resign, constructively terminating his employment.

55.     In violation of the IHRA, 775 ILCS 5/6-101(A), Defendant took the adverse employment action against Plaintiff on account of his lawful requests for accommodation.

56.     As a proximate cause of the aforementioned unlawful employment actions, Plaintiff has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, emotional distress, and medical expenses.

57.     In its actions toward Plaintiff, Defendant CITY acted with malice.

COUNT V - RETALIATION UNDER THE ILLINOIS WHISTLEBLOWER ACT
740 ILCS § 174/15(a); 174/20.1
Against Defendant CITY

58.     Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein

59.     At all times relevant to this action, Defendants were Plaintiffs' "employer" as defined in 740 ILCS § 174/5.

60.     At all times relevant to this action, Plaintiff was an "employee" as defined in 740 ILCS § 174/5, and they met his employers' legitimate expectations.

61.     The Whistleblower Act prohibits employers from retaliating against employees for disclosing information "in a court...or in any other proceeding, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(a).

62.     The Act also prohibits an employer from terminating employees because they disclose or attempt to disclose public corruption or wrongdoing. 740 ILCS 174/20.1.

63.     Sometime in late July 2019, Defendant Ellexson accused Plaintiff of providing information discussed in private meetings to a former firefighter, which later became part of her lawsuit against Defendant CITY.

64.     Approximately a week later, on July 31, 2019, Defendant CITY gave Plaintiff the new proposed contract with the language requiring him to attend an accredited program in order to receive a pay increase. However, Defendant ELLEXSON  stated they were not requiring him to go to school. However, if he did, when he was able to do so, he would be able to receive a pay increase.

65.     Less than a month later, Defendants constructively terminated Plaintiff's employment by telling him he could go back to college, endangering his health, or or take a demotion. Plaintiff had no option but to tender his resignation.

66.     Defendants terminated Plaintiffs in retaliation for disclosing suspected violations of law, public corruption and wrongdoing in a manner that would lead to a court proceeding.

### COUNT VI - COMMON LAW RETALIATORY DISCHARGE
### Against Defendant CITY

67.     Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein.

68.     Plaintiff was Defendant CITY's employee and met its employer's legitimate expectations.

69.     Defendant CITY terminated Plaintiff in retaliation for what it believed were his indirect disclosures to a court proceeding of suspected violations of law.

70.     Plaintiff's constructive termination violated clearly mandated public policies in Illinois that protect patriation in and cooperation with law enforcement and government investigations, and opposition to misconduct and fraud.

71.    Defendant CITY constructively terminated Plaintiff intentionally, willfully and with actual malice, in retribution for Plaintiff's lawful actions. These terminations were outrageous and done with complete disregard for the legal rights or dignity of Plaintiff.

### COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### Against all Defendants

72.    Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein.

73.    At all times alleged in the Complaint, Plaintiff was acting in the course of his employment and in furtherance of the business of Defendant.

74.    The conduct of Defendant in refusing Plaintiff's reasonable requests for accommodation, subjecting him to disciplinary action, and constructively terminating him was truly extreme and outrageous.

75.    Defendant intended that their conduct would inflict severe emotional distress on Plaintiff or knew that there was a high probability that the conduct would cause severe emotional distress.

76.    The conduct in fact caused severe emotional distress, in that Plaintiff was forced to seek retirement.

77.    As a proximate cause of the tortious conduct of Defendant CITY, Plaintiff has suffered harm, including loss of earnings and emotional pain, humiliation, mental anguish, loss of enjoyment of life, emotional distress, and medical expenses.

### COUNT VIII - CONSPIRACY
### Against All Defendants

78.    Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein.

79.     As described more fully above, the individual Defendants reached an agreement amongst themselves to constructively terminate Plaintiff in retaliation for allegedly disclosing information that led to a federal lawsuit, thereby depriving Plaintiff of his rights, all as described more fully throughout this Complaint. In this manner, Defendants, acting in concert with each other, have conspired by concerted action to accomplish an unlawful purpose by unlawful means.

80.     Defendants did this in an attempt to punish Plaintiff and relieve themselves of being held responsible for the illegal activities alleged in the previous lawsuit.

81.     In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

82.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered damages, severe emotional distress and anguish, and a deprivation of his liberty, as is more fully alleged above.

83.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

84.     As a proximate result of the above detailed actions of Defendants, Plaintiff was injured including physical injury, mental suffering, anguish and humiliation and fear.

### COUNT IX - INDEMNITY
### Against Defendant CITY

85.     Plaintiff hereby realleges and incorporates all preceding paragraphs of this complaint as if fully set forth herein.

86.     Defendant CITY is or was the employer of the individual defendants.

87.     The individual defendants committed the acts alleged above under color of law and in the scope of their employment as employees of KFD.

88.     As such, should Defendant WELL-ARMSTRONG and/or Defendant ELLEXSON be found liable on the claims set forth above, Plaintiff demands that, pursuant to 745 ILCS 10/9-102, the Defendant CITY be found liable for any judgment Plaintiff obtains against said Defendants, as well as attorney's fees and costs awarded.

## **CONCLUSION**

WHEREFORE, Plaintiff prays for this Court to enter judgment in his favor against Defendants to compensate Plaintiff for his  injuries, to award Plaintiff reasonable attorneys' fees, costs and expenses, and punitive damages, and for such other relief as this Court deems reasonable, just, and proper.


DATED: March 4, 2020

Respectfully Submitted,

s/Kellie Walters
The Walters Law Firm
350 N. Orleans St., Ste, 9000N
Chicago, IL 60654
(312) 428-5890
kwalters@walterslawoffice.net